1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

SKYTEC, INC.,

                              Plaintiff,

        v.

LOGISTIC SYSTEMS, INC.,

                              Defendant.

No. 3:15-CV-02104-BJM

The Honorable Bruce J. McGiverin

**DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

53094394.4

# TABLE OF CONTENTS

Page

I. SUMMARY OF ARGUMENT AND RELIEF REQUESTED ...................................................1

II. FACTUAL BACKGROUND ................................................................................................2

    A.    Current Procedural Posture ................................................................................2

    B.    The Parties ..........................................................................................................2

    C.    For 30 years, LogiSYS has successfully implemented and launched CAD and RMS systems for municipalities throughout the United States. ......................2

    D.    LogiSYS contracted with Skytec on three other projects prior to the projects at dispute in this lawsuit.  As with the contracts in the present dispute, Skytec defaulted on its payment obligations. .............................................3

    E.    In 2009, LogiSYS agreed to work with Skytec on the four projects at the heart of the present dispute; once again, Skytec failed to timely pay. ....................4

    F.    LogiSYS sent Skytec's debts to collections; Skytec responded by suing LogiSYS. ...............................................................................................................5

    G.    Skytec was fully paid for the projects. ....................................................................5

    H.    During this lawsuit, Skytec created its own software to replace the LogiSYS products. ................................................................................................6

    I.    Skytec terminated the parties' agreements. ...........................................................6

III. ARGUMENT ..........................................................................................................................6

    A.    The Parties' Relationship is Not Governed by Law 75. ...........................................7

        1.    Skytec is not a dealer under Law 75. ........................................................8

        2.    Even if Skytec was a dealer, LogiSYS did not impair or terminate the parties' subcontracts; Skytec did. .........................................................9

        3.    Even if LogiSYS constructively terminated the parties' subcontracts, LogiSYS had just cause. ....................................................10

    B.    Skytec's Relief is Limited to the Exclusive Remedy Specified in the Parties' Subcontracts. ...............................................................................................12

IV. CONCLUSION ......................................................................................................................15

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

53094394.4

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..................................................................................................6

*Biomedical Instrument & Equip. Corp. v. Cordis Corp.*,
  797 F.2d 16 (1st Cir. 1986)........................................................................................11

*Cajigas v. Order*,
  115 F. Supp. 2d 246 (D.P.R. 2000)......................................................................13, 15

*Calero-Cerezo v. U.S. Dep't of Justice*,
  355 F.3d 6 (1st Cir. 2004)...........................................................................................6

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)....................................................................................................7

*Dyno Nobel, Inc. v. Amotech Corp.*,
  63 F. Supp. 2d 140 (D.P.R. 1999)..............................................................................11

*Fernandez-Fernandez v. Municipality of Bayamon*,
  942 F. Supp. 89 (D.P.R. 1996)...................................................................................13

*Freightliner, LLC v. Puerto Rico Truck Sales, Inc.*,
  399 F. Supp. 2d 57 (D.P.R. 2005)..............................................................................11

*Irvine v. Murad Skin Research Labs., Inc.*,
  194 F.3d 313 (1st Cir. 1999)........................................................................................9

*Jordan K. Rand, Ltd. v. Lazoff Bros.*,
  537 F. Supp. 587 (D.P.R. 1982).................................................................................12

*Jorge Rivera Surillo & Co. v. Cerro Copper Prods. Co.*,
  885 F. Supp. 358 (D.P.R. 1995)...............................................................................4, 8

*Luce & Co. v. J.R.T.*,
  86 D.P.R. 425 (1962)..................................................................................................14

*Nike Int'l, Ltd. v. Athletic Sales, Inc.*,
  689 F. Supp. 1235 (D.P.R. 1988)...........................................................................8, 10

*Nike Int'l, Ltd. v. Athletic Sales, Inc.*,
  760 F. Supp. 22 (D.P.R. 1991).............................................................................14, 15

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

53094394.4

*PPM Chemical Corp. v. Saskatoon Chemical Ltd.*,
　931 F.2d 138 (1st Cir. 1991) ..................................................................11

*Plaza Carolina Mall, L.P. v. Municipality of Barceloneta*,
　91 F. Supp. 3d 267 (D.P.R. 2015) ....................................................12, 15

*Tatan Mgmt. v. Jacfran Corp.*,
　270 F. Supp. 2d 197 (D.P.R. 2003) .........................................................11

*Trafon Grp., Inc. v. Butterball, LLC*,
　820 F.3d 490 (1st Cir. 2016) .....................................................................7

*Triangle Trading Co. v. Robroy Indus., Inc.*,
　200 F.3d 1 (1st Cir. 1999) ...............................................................7, 8, 9

*Waterproofing Systems, Inc. v. Hydro-Stop, Inc.*,
　440 F.3d 24 (1st Cir. 2006) ......................................................................11

## STATUTES

Puerto Rico's Dealers' Contracts Act, 10 L.P.R.A. §§ 278-278e,
　Law No. 75 of June 24, 1964 ......................................................... passim

10 L.P.R.A § 278(a) ............................................................................8

10 L.P.R.A § 278(d) ..........................................................................11

10 L.P.R.A § 278a ............................................................................10

10 L.P.R.A § 278b ............................................................................10

31 L.P.R.A § 3391 ............................................................................12

31 L.P.R.A § 3471 ..................................................................12, 13, 14

## OTHER AUTHORITIES

Fed. R. Civ. P. 56(a) ...........................................................................6

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206) 447-9700

53094394.4

1    Defendant Logistic Systems, Inc. ("LogiSYS"), hereby moves for partial summary
2    judgment against Plaintiff Skytec Inc. ("Skytec"). This Court should hold as a matter of law that
3    Puerto Rico's Dealers' Contracts Act, 10 L.P.R.A. §§ 278-278e, Law No. 75 of June 24, 1964
4    ("Law 75") does not apply to the parties' relationship. Additionally, Skytec's damages must be
5    limited to the exclusive remedy agreed upon by the parties in their written subcontracts.[1]

## I.   SUMMARY OF ARGUMENT AND RELIEF REQUESTED

Skytec provided emergency services and law enforcement Computer Aided Dispatch ("CAD") and Records Management Software ("RMS") to certain agencies and municipalities of the Commonwealth of Puerto Rico.  To do so, it would subcontract LogiSYS's Northstar CAD and RMS systems to, in turn, supply them to government agencies and municipalities as part of a larger system offered by Skytec. LogiSYS and Skytec entered into four subcontracts for such projects that are relevant to this case: AEMEAD, PRLEDS, METRO I, and METRO II. LogiSYS delivered the systems Skytec ordered and provided further maintenance and support.

Over time, Skytec continually failed to meet its payment obligations to LogiSYS even as Skytec collected of $12.5 million from the Puerto Rico government for implementation of the LogiSYS products, and for licenses and maintenance. In response to LogiSYS's collection efforts, Skytec sued LogiSYS, claiming that the products LogiSYS delivered were not "operational," that the projects were never completed, that the Puerto Rican government was not extending license agreements with Skytec, and that LogiSYS was responsible for $3,618,744 in damages to Skytec. Skytec's claim for damages appears to derive from its contention that Law 75, Puerto Rico's dealership statute, governs the parties' relationship.

While LogiSYS agreed to work exclusively with Skytec in Puerto Rico, it did so as a sub-contractor in larger projects in which Skytec was the prime contractor.  It never conferred "dealer" status on Skytec.

---

[1] Factual citations are to the Statement Of Material Facts In Support Of Defendant's Motion For Partial Summary Judgment filed contemporaneously herewith. For example, SMF 1 means Statement of Material Facts ¶ 1.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1
Case No. 3:15-CV-02104-BJM

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

53094394.4

Further, even if Law 75 applied, LogiSYS did not impair or terminate the contracts. It simply asked to be paid what was owed to it under the agreements' express terms. In contrast, Skytec affirmatively terminated the agreements in December 2016 and replaced LogiSYS's software with a competing software "developed" by Skytec. As such, Skytec's Law 75 claims should be dismissed.

Finally, the parties agreed to clear exclusive remedy and limitation of liability provisions in the subcontracts. For these reasons described below, these provisions should be enforced.

## II. FACTUAL BACKGROUND

### A. Current Procedural Posture

Skytec filed this lawsuit on July 9, 2015 in the Puerto Rico Court of First Instance, Bayamón Section. The case was removed to federal court on August 14, 2015. Dkt. 1.

Trial is currently set for September 17, 2018. Dkt. 101.

### B. The Parties

LogiSYS is a family-owned software business located in Missoula, Montana. LogiSYS provides computer-aided dispatch ("CAD"), records management systems ("RMS"), and geographic information systems ("GIS") solutions for public safety agencies, including law enforcement, fire, and emergency medical services agencies and other departments. SMF 3.

Skytec is the current name of a telecommunications entity formed in 1999 as SkyCom, Inc. It has sought to implement CAD systems in Puerto Rico by entering into contracts directly with municipalities and government agencies. SMF 4.

### C. For 30 years, LogiSYS has successfully implemented and launched CAD and RMS systems for municipalities throughout the United States.

Generally, LogiSYS contracts directly with the municipality that is the end user of the software. LogiSYS works directly with public safety agencies to flesh out the municipality's technical needs. LogiSYS does a site survey, creates a timeline within which the work is to be performed, works with the municipality to develop data and geographical requirements, provides

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2
Case No. 3:15-CV-02104-BJM

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206) 447-9700

1  hardware specifications for purchase, and identifies special requirements. After it has taken these

2  steps, it provides software functional specifications documents.  All of these steps are done hand-

3  in-hand with the municipality so that there is no confusion regarding the end product that the

4  municipality will be getting.  SMF 6.

5  After determining all of the specifications, LogiSYS builds the system, setting up server

6  and work stations, gathering, analyzing,  and configuring data, and building the map to be used

7  by the system. LogiSYS sets up a turnkey system, tests and calibrates to specific municipality

8  needs, trains the system administration users at LogiSYS headquarters, then provides on-site user

9  training before taking the customer live.  Once the software has gone live, LogiSYS provides

10 ongoing around-the-clock support. SMF 7.

11 **D.    LogiSYS contracted with Skytec on three other projects prior to the projects at
12         dispute in this lawsuit.  As with the contracts in the present dispute, Skytec
        defaulted on its payment obligations.**

13 Between 2005 and 2007, Skytec approached LogiSYS regarding CAD and RMS projects

14 for the San Juan Police Department, the Ponce Police Department, and the Puerto Rico

15 Emergency Management Services Administration (referred to as "AEMEAD" based on its

16 acronym in Spanish) (collectively, the "Initial Projects"). SMF 9.

17 Unlike with LogiSYS's projects on the United States mainland in which LogiSYS works

18 directly with the municipality using its software, Skytec's proposals for the Puerto Rico CAD

19 and RMS projects involved Skytec as the prime contractor with the government and made Skytec

20 responsible for implementing and supporting the CAD and RMS projects.  Skytec convinced

21 LogiSYS that based upon its experience in the telecommunications industry, it would be able to

22 successfully deploy LogiSYS software in Puerto Rico. SMF 10.

23 LogiSYS and Skytec entered into subcontractor agreements for the Initial Projects.[2]

24

25 ─────────────────────────
[2] Skytec may contend that LogiSYS consented to application of Law 75 based on a letter sent
26 from LogiSYS to Skytec, dated October 23, 2006, in which LogiSYS "confirm[ed] that Skytec is
   is the exclusive provider in Puerto Rico of the Logistics Systems, Inc, FirstCall CAD, the
   NorthStar CAD and the DataTrak RMS products." Amended Complaint, Exhibit A. But consent

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3
Case No. 3:15-CV-02104-BJM

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

During these projects, LogiSYS provided Skytec with hardware, software, and training. All three of the Initial Projects were successfully delivered to Skytec. SMF 11.

Despite the success of the Initial Projects, after making some initial payments, Skytec stopped paying LogiSYS. As of October 31, 2009, Skytec owed LogiSYS $672,738.75 in past due amounts. While Skytec disagreed with the full extent of the amount due, it acknowledged that it owed LogiSYS over $400,000. SMF 13.

**E.     In 2009, LogiSYS agreed to work with Skytec on the four projects at the heart of the present dispute; once again, Skytec failed to timely pay.**

In early 2009, Skytec asked LogiSYS to participate in new projects. Because of the large amount due to LogiSYS from Skytec, LogiSYS initially declined. However, Skytec agreed to pay $433,790.51 towards the amounts owing on the Initial Projects and promised that the same issue would not occur again. SMF 14.

Based on Skytec's agreement to pay past due amounts and its promise not to fall behind on payments again, LogiSYS agreed to work with Skytec on the four Puerto Rican government projects that are at issue in this case: AEMEAD, PRLEDS, METRO I, and METRO II. SMF 15.

LogiSYS met the required milestones and delivered the systems to Skytec. However, once again, Skytec failed to meet its payment obligations to LogiSYS. SMF 16.[3]

---

to the applicability of Law 75 cannot be read into this letter. LogiSYS provided the letter because Skytec informed LogiSYS that it needed such a letter in order to secure government contracts. Skytec did not inform LogiSYS that such a letter was intended to or could have the effect of bringing the parties' relationship into the ambit of Law 75. LogiSYS did not here or ever agree that the parties' relationship was governed by Law 75. SMF 12.

The October 2006 letter instead is limited to its literal content, which simply acknowledges that LogiSYS's CAD and RMS products were only present in Puerto Rico in conjunction with Skytec projects. The letter does not change the fact that Skytec was not a dealer of LogiSYS's products, nor the fact that the parties' relationship was that of a contractor and subcontractor rather than that of a dealer and distributor. Law 75 defines "dealer" "in terms of the person's [i.e., Skytec's] activities in relation to the merchandise or service." *Jorge Rivera Surillo & Co. v. Cerro Copper Prods. Co.*, 885 F. Supp. 358, 361 (D.P.R. 1995). As described above, Skytec's activities in relation to LogiSYS's products were not that of a dealer.

[3] Skytec requested that the license and maintenance fees commence in 2014 rather than in 2013, but it did not dispute that the fees were, in fact, owed. SMF 16.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4
Case No. 3:15-CV-02104-BJM

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206) 447-9700

1    **F.      LogiSYS sent Skytec's debts to collections; Skytec responded by suing LogiSYS.**

2          LogiSYS made multiple attempts to resolve the issue of outstanding payment with Skytec

3    that were either ignored or rebuffed. At one point in 2015, Skytec Vice President Miguel

4    Carbonell indicated that the matter could be resolved because Skytec had apparently found a

5    Puerto Rican investor interested in acquiring LogiSYS, but Skytec's proposed investor never

6    materialized. Skytec has also claimed that it need not pay the license fees because it was not paid

7    by the Puerto Rican government, a contention belied by the deposition testimony of Skytec

8    President Henry Barreda and Skytec Chief Financial Officer Annie Astor. SMF 17-18.

9          In 2015, after multiple attempts to collect payments due under the parties' subcontracts,

10   LogiSYS was finally forced to turn to a collections agency for assistance collecting the amounts

11   owed.  SMF 19.

12         In a preemptive measure to prevent LogiSYS from contacting the Puerto Rican

13   government and from recovering amounts owed, Skytec sued LogiSYS, claiming that LogiSYS

14   owed it millions of dollars for work Skytec allegedly had to complete on its own. SMF 20.

15   **G.      Skytec was fully paid for the projects.**

16         Skytec apparently completed its contracts with the Puerto Rican government. Its website

17   proudly boasts, for instance, that Skytec "has successfully implemented the CAD in all the 78

18   Municipal Emergency Management offices in Puerto Rico." Moreover, despite assertions to the

19   contrary in its Amended Complaint, Skytec has received payment in full for implementation by

20   the Puerto Rican government. Mr. Barreda testified at his deposition that Skytec had, indeed,

21   been collecting payments from the Puerto Rican government on agreements, and renewals,

22   related to the LogiSYS projects. Ms. Astor testified in her deposition that Skytec had been paid

23   in full from the Puerto Rican government for the AEMEAD, PRLEDS, METRO I, and METRO

24   II project agreements, and license renewal agreements (minus one disputed payment, for which

25   Skytec has sued the Puerto Rican government). Mr. Barreda and other Skytec witnesses

26   confirmed that Skytec was collecting license and maintenance payments from the Puerto Rican

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206) 447-9700

53094394.4

government for LogiSYS's Northstar CAD system and associated products, while at the same time refusing to pay LogiSYS the license and maintenance fees provided for under the Subcontracts. SMF 21-22.[4]

**H.     During this lawsuit, Skytec created its own software to replace the LogiSYS products.**

In late 2015, Skytec decided to create its own web-based CAD system, termed "SkyCAD," without telling LogiSYS. This system was, according to Skytec, designed to replace the LogiSYS Northstar CAD system with a system developed in-house by Skytec that replicated NorthStar CAD's functionality. Skytec installed SkyCAD at AEMEAD and other municipalities with the intent to replace NorthStar CAD. Skytec is charging AEMEAD for the use of SkyCAD and, apparently, Northstar CAD. SMF 23.

**I.     Skytec terminated the parties' agreements.**

Skytec terminated the parties' agreements in late 2016. In December 2016, Mr. Barreda sent Srinivas Mondavas, LogiSYS's President, a letter stating that Skytec would not renew the AEMEAD license for the NorthStar CAD products and that it believed the other Agreements were no longer in effect. LogiSYS 80825. In 2017, Skytec confirmed it is not promoting any LogiSYS product; instead, it is promoting only its own SkyCAD and RMS systems. SMF 24.

## III.   ARGUMENT

Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if it "is one that could be resolved in favor of either party." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby*,

---

[4] During these depositions, multiple Skytec witnesses testified that Skytec kept copies of its agreements and communications with the Puerto Rican government, as well as payment documentation and summary reports, but despite LogiSYS's request for production of these documents, Skytec did not produce them by the discovery deadline, and many remain unproduced today. SMF 22, n.1.

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

53094394.4

1  *Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of "informing the

2  district court of the basis for its motion, and identifying those portions" of the record materials

3  "which it believes demonstrate the absence" of a genuine dispute of material fact. *Celotex Corp.*

4  *v. Catrett*, 477 U.S. 317, 323 (1986).

5       This Court should enter summary judgment (a) concluding that Law 75 does not govern

6  the parties' relationship and (b) limiting LogiSYS's liability, if any, to the exclusive relief

7  specified in the parties' subcontracts.

8  **A.   The Parties' Relationship is Not Governed by Law 75.**

9       While Skytec's true causes of actions are hard to ascertain, as the "Causes of Action"

10 specified in its Amended Complaint are actually forms of relief rather than causes of action,

11 Skytec's Complaint appears to invoke Puerto Rico's Law 75 as a basis for the relief it seeks. *See*

12 Dkt. 12, Amended Complaint at ¶¶ 28, 29, 59, 62 (citing Law 75). Law 75 provides certain

13 protections for Puerto Rican "dealers" in order to "remedy the abusive practices of suppliers who

14 arbitrarily eliminated distributors after they had invested in the business and had successfully

15 established a market in Puerto Rico for the supplier's product or service." *Triangle Trading Co.*

16 *v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (internal citation and quotation marks

17 omitted); 10 L.P.R.A §§ 278-278e. The statute provides "that, in a dealer's contract, 'no

18 principal or grantor may directly or indirectly perform any act detrimental to the established

19 relationship or refuse to renew said contract on its normal expiration, except for just cause.' "

20 *Trafon Grp., Inc. v. Butterball, LLC*, 820 F.3d 490, 493 (1st Cir. 2016) (quoting 10 L.P.R.A

21 § 278a).

22       However, Law 75 cannot govern Skytec and LogiSYS's relationship because Skytec does

23 not qualify as a "dealer" under Puerto Rican law. Moreover, even if Skytec could be classified as

24 a "dealer," Skytec would not be entitled to the protections of Law 75 because Skytec, not

25 LogiSYS, impaired and ultimately terminated the parties' relationship. Further, even if LogiSYS

26 could be seen to have constructively terminated the parties' relationship, any such constructive

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7
Case No. 3:15-CV-02104-BJM

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206) 447-9700

53094394.4

termination would have been supported by just cause—namely, Skytec's refusal to pay significant amounts owed under the parties' subcontracts. "[T]he basic purpose of [Law 75] is to highly compensate . . . the dealer for the hard-earned clientele unjustly appropriated by the supplier." *Nike Int'l, Ltd. v. Athletic Sales, Inc.*, 689 F. Supp. 1235, 1237 (D.P.R. 1988). No such appropriation occurred here.

### 1.   Skytec is not a dealer under Law 75.

Under Law 75, a "dealer" is a "[p]erson actually interested in a dealer's contract because of his having effectively in his charge in Puerto Rico the distribution, agency, concession or representation of a given merchandise or service." 10 L.P.R.A § 278(a). In order to ascertain who qualifies as a dealer, courts examine the following nonexhaustive criteria: "(1) activities necessary to the transportation of the products or services from the manufacturer to the consumer or to some point in between; (2) publicity; (3) market coordination; (4) merchandise deliveries; (5) collections; (6) the keeping of an inventory; (7) promotion, and (8) closing of sales contracts." *Jorge Rivera Surillo & Co. v. Cerro Copper Prods. Co.*, 885 F. Supp. 358, 361 (D.P.R. 1995); *see also Triangle Trading Co.*, 200 F.3d at 4–5 (also stating as criteria the following: authority to extend credit, assumption of risk, maintaining facilities, and offering product-related services to clients). No one criterion is determinant. *See Jorge Rivera Surillo & Co.*, 885 F. Supp. at 361-62.

Law 75 was not meant to apply to companies like Skytec because the relationship between LogiSYS and Skytec is not a dealer-distributor relationship.  Rather than establishing a market for LogiSYS's products, Skytec instead established a market for its own "interoperability" services systems. LogiSYS's products—the NorthStar CAD system and Datarak RMS system—were merely a component of Skytec's interoperability systems for specific Skytec clients. Indeed, Skytec elected to subcontract those components of its systems to LogiSYS; Skytec was the one to approach LogiSYS in order to subcontract development of hardware and software.  SMF 25.

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206) 447-9700

53094394.4

1    In other words, the Skytec-LogiSYS relationship was that of a contractor-subcontractor,

2    not that of a dealer-distributor. *See Triangle Trading Co.*, 200 F.3d at 4 (noting that the definition

3    of "dealer" is restricted to "an independent entrepreneur who has established a <u>continuing</u>

4    <u>relationship</u> . . . with [a] principal for the distribution of a product or service . . . geared to create,

5    develop, and coordinate a <u>market</u> and to obtain <u>new</u> clients" (underline added)). Skytec and

6    LogiSYS's relationship was on a <u>per-project basis</u> to serve Skytec's <u>existing</u> clients, not to obtain

7    new clients.

8    Additionally, Skytec never assumed credit risks for LogiSYS by extending lines of credit

9    for its clients. Instead, it did the opposite by withholding payment to LogiSYS when Skytec's

10   government clients were late in paying Skytec. In fact, Skytec even withheld payment from

11   LogiSYS when it did get paid by its government clients, thereby (improperly) transferring the

12   credit risk to LogiSYS. SMF 26.

13   For the foregoing reasons, Skytec is not a "dealer" as Law 75 contemplates. Skytec thus

14   is not entitled to the special protections of Law 75.

15       **2.    Even if Skytec was a dealer, LogiSYS did not impair or terminate the
             parties' subcontracts; Skytec did.**

16

17   There are "two essential elements" for a claim alleging an impermissible termination or

18   impairment of a dealer's contract: (1) "that the contract existing between the parties was

19   impaired or terminated without just cause" and (2) "that there were resulting damages." *Irvine v.*

20   *Murad Skin Research Labs., Inc.*, 194 F.3d 313, 320 (1st Cir. 1999). Skytec cannot establish the

     first essential element based on the evidence of record.

21

22   LogiSYS did not impair the parties' relationship. LogiSYS delivered the products that

23   were ordered under the AEMEAD, PRLEDS, METRO I, and METRO II subcontracts with

24   Skytec. LogiSYS also continued to provide support and training as required under the

     subcontracts, and when requested by Skytec. SMF 27.

25

26   While LogiSYS did take steps to collect overdue payments from Skytec when Skytec

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9
Case No. 3:15-CV-02104-BJM

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

53094394.4

failed to meet its contractual obligations to pay LogiSYS, LogiSYS never terminated the parties'
relationship. Nor did LogiSYS impair the relationship by pursuing the Puerto Rico CAD/RMS
services market outside of its relationship with Skytec.

Instead, Skytec impaired the parties' relationship by failing to pay contractually obligated
amounts, and Skytec eventually terminated the relationship in December 2016. Skytec's
President sent LogiSYS's President a letter stating that Skytec would not renew the AEMEAD
license for the NorthStar CAD products and that it believed the other Agreements were no longer
in effect. Even assuming arguendo that Skytec was a dealer, Skytec's express notice that it would
not be renewing the AEMEAD license constituted termination of the part of Skytec. SMF 28.
*Cf. Nike Int'l, Ltd.*, 689 F. Supp. at 1236 (finding that a dealer's failure to provide written notice
of renewal of the parties' relationship, as required by the parties' contract, constituted
termination by the dealer). When a dealer, rather than a principal, terminates the contract, "[t]he
protections of Law 75 are not triggered." *Id.* at 1241.

Since LogiSYS was not the party to impair or eventually terminate its relationship with
Skytec, Law 75 does not control. *See* 10 L.P.R.A § 278a; 10 L.P.R.A § 278b (providing for
damages if the <u>principal</u> impairs or terminates the principal-dealer relationship without just
cause). The Puerto Rico "legislature did not intend that Law 75 be a safe-haven for dealers to
avoid the . . . contracts to which they willingly subscribed." *Nike Int'l, Ltd.*, 689 F. Supp. at
1238. Skytec cannot walk away from the parties' subcontracts and then turn around and claim
entitlement to the protections of Law 75.

### 3.    Even if LogiSYS constructively terminated the parties' subcontracts, LogiSYS had just cause.

Impairment or termination of a contract, even by a principal under Law 75, is excused if
it is done for just cause. "Just cause" is defined as the "[n]on performance of any of the essential
obligations of the dealer's contract, on the part of the dealer, or any action or omission on his
part that adversely and substantially affects the interests of the principal or grantor in promoting

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10
Case No. 3:15-CV-02104-BJM

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206) 447-9700

the marketing or distribution of the merchandise or service." 10 L.P.R.A § 278(d).

Although the determination of just cause depends on the facts of each case, courts consistently have held that paying for goods on time is generally one of the essential obligations of the dealer's contract, and that a dealer's failure to meet this obligation constitutes just cause for termination. *PPM Chemical Corp. v. Saskatoon Chemical Ltd.*, 931 F.2d 138, 140 (1st Cir. 1991) (granting summary judgment because failure to pay on time justified termination of contract); *Biomedical Instrument & Equip. Corp. v. Cordis Corp.*, 797 F.2d 16, 17 (1st Cir. 1986); *Freightliner, LLC v. Puerto Rico Truck Sales, Inc.*, 399 F. Supp. 2d 57, 62 (D.P.R. 2005); *Tatan Mgmt. v. Jacfran Corp.*, 270 F. Supp. 2d 197, 201 (D.P.R. 2003); *Dyno Nobel, Inc. v. Amotech Corp.*, 63 F. Supp. 2d 140 (D.P.R. 1999).[5]

Skytec failed in this essential obligation of each of its subcontracts with LogiSYS by not paying license and maintenance fees for LogiSYS's products. In fact, Skytec stopped paying its contractually-obligated license and maintenance fees despite receiving full payment from the Government for LogiSYS's systems. When confronted about its failure to make required license and maintenance payments, Skytec (a) lied by claiming that the Government was not paying Skytec, and (b) stalled by stating that the matter could be resolved after a prospective investor became involved with Skytec. Skytec's false statements and failure to pay contractually-obligated amounts easily amount to just cause for LogiSYS to terminate the parties' relationship.

---

[5] Although the First Circuit has noted that, in some rare situations, the failure to pay on time may not be an essential obligation of the contract in a case that presents the "unusual, abnormal circumstance in which a supplier does not care about late payments," that is not the situation here. *PPM Chemical Corp. of P.R.*, 931 F.2d at 140; *see also Biomedical Instrument*, 797 F.2d at 17. LogiSYS reasonably viewed payment of millions of dollars in license and maintenance fees as an "essential obligation" of each of its subcontracts. There is no question that LogiSYS demanded payments as they became due. LogiSYS attempted to work with Skytec to secure payments that were due. And when Skytec still refused to pay, LogiSYS sent the matter to a collections agency, as the parties' subcontracts provided. *See, e.g.*, Dkt., 14-5, AEMEAD Subcontract ¶ 3. LogiSYS's efforts to work with Skytec to address the outstanding license and maintenance fees do not diminish the fact that payment was essential to the relationship. *See Waterproofing Systems, Inc. v. Hydro-Stop, Inc.*, 440 F.3d 24, 30 (1st Cir. 2006) ("It is contrary to the principle enshrined in Law 75 to require that suppliers terminate distribution agreements immediately upon distributors' failure to pay timely, or risk being forever banned from so doing.").

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

1    These are not the tactics of a "dealer" engaging in a good-faith relationship with its vendor. *See*

2    *Jordan K. Rand, Ltd. v. Lazoff Bros.*, 537 F. Supp. 587, 598 (D.P.R. 1982) (finding that even if

3    the parties' relationship was that of a dealer-distributor, the dealer-defendant violated the parties'

4    agreement by failing to pay royalties due, by unfairly competing with the plaintiff-distributor,

5    and by taking actions that could adversely affect the goodwill and reputation of the plaintiff-

6    distributor's brand, and thus concluding that the plaintiff had just cause for terminating the

7    parties' relationship).

8         Ultimately, LogiSYS was not the one to terminate the parties' relationship; Skytec was,

9    in 2016. But LogiSYS would have been justified in terminating the relationship much sooner,

10   based on Skytec's repeated failures to pay owed amounts, duplicitous statements about why it

11   refused to pay or when it would pay, and bad faith conduct during the parties' relationship. As a

12   result, Skytec is not entitled to the protections of Law 75, even if it could be considered a dealer.

13   This Court should therefore conclude as a matter of law that Law 75 does not apply to this case.

14   **B.    Skytec's Relief is Limited to the Exclusive Remedy Specified in the Parties'
            Subcontracts.**

15        This Court should also enter partial summary judgment limiting LogiSYS's potential

16   liability to the terms of its AEMEAD, PRLEDS, METRO I, and METRO II subcontracts with

17   Skytec.

18        "[C]ontracting parties will be bound by their contractual obligations, which must be

19   fulfilled in accordance with the terms of the agreement." *Plaza Carolina Mall, L.P. v.*

20   *Municipality of Barceloneta*, 91 F. Supp. 3d 267, 282 (D.P.R. 2015). If the terms of a valid

21   contract between parties "are clear and leave no doubt as to the intentions of the contracting

22   parties, the literal sense of its stipulations shall be observed." 31 L.P.R.A § 3471. Skytec does

23   not dispute that the Subcontractor Agreements between Skytec and LogiSYS were valid. *See*

24   Amended Complaint (alleging breach of contract, not invalidity of contract); *see also* 31 L.P.R.A

25   § 3391. Those subcontracts contain several provisions which clearly limit LogiSYS's liability,

26

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12
Case No. 3:15-CV-02104-BJM

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206) 447-9700

1   and which must accordingly be observed in this case. SMF 29, 30, 31; *see Cajigas v. Order*, 115

2   F. Supp. 2d 246, 250 (D.P.R. 2000) ("[31 L.P.R.A § 3471] is strict in its mandate that courts

3   should enforce the literal sense of a written contract, unless the words are somehow contrary to

4   the intent of the parties." (quoting *Fernandez-Fernandez v. Municipality of Bayamon*, 942 F.

5   Supp. 89, 94 (D.P.R. 1996)). Under those mutually-agreed-upon provisions, LogiSYS cannot be

6   held liable for the damages which Skytec claims.

7       One of these provisions establishes an exclusive repair remedy in the event that any

8   system provided by LogiSYS fails to perform as agreed-upon. The provision states, in whole:

9       10. EXCLUSIVE REMEDY

10      SKYTEC agrees that its only remedy under this warranty shall be correction by
        LOGISYS of any failure to perform as described in the Functional Specifications

11      Document or the correction of any program coding errors as soon as is reasonably
        possible after notification by SKYTEC of such failure to perform or termination as

12      described in Section 13 of this Subcontract Agreement.

13  SMF 29.

14      The repair remedy is reiterated in the warranty provision referenced in the exclusive

15  remedy provision. Specifically, LogiSYS warranted that it would deliver operational software

16  that performed as the parties had jointly agreed it must perform and that was free of coding

17  errors; if the software or services failed to meet these requirements, LogiSYS was obliged "to

18  remedy any failure to perform as described in the Functional Specification Document and to

19  correct program coding errors as soon as is reasonably possible after notification by SKYTEC of

20  such failure to perform, or coding errors." SMF 30.

21      The warranty and exclusive remedy provisions clearly laid out the proper course of action

22  for Skytec to take if it believed a program delivered by LogiSYS was nonoperational or

23  otherwise failed to perform as the parties had agreed: in such a case, Skytec needed to notify

24  LogiSYS of any deficiencies so that LogiSYS could fix them. But despite LogiSYS's warranty

25  that it would fix the programs if Skytec notified it of any failure to perform or coding errors, and

26  despite the exclusive remedy provision, Skytec failed to notify LogiSYS of deficiencies it now

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13
Case No. 3:15-CV-02104-BJM

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206) 447-9700

1    alleges. By its failure to notify, Skytec deprived LogiSYS of the opportunity to evaluate or

2    correct alleged problems with the systems.

3           Skytec cannot now obtain a remedy contrary to the parties' original intent. The parties'

4    subcontracts made "correction by LogiSYS" the "exclusive" and "only" remedy. SMF 29. These

5    terms are clear and unambiguous, and as a result, the Court must "abstain from speculating about

6    possible intentions of parties and should interpret them according their will expressed at the time

7    of [the contract's] execution." *Nike Int'l, Ltd. v. Athletic Sales, Inc.*, 760 F. Supp. 22, 24 (D.P.R.

8    1991). Skytec declined to avail itself of its exclusive remedy under the parties' subcontracts, and

9    instead apparently incurred significant effort and expense attempting to conduct its own repairs

10   to the systems. But because the subcontracts clearly provided a single, exclusive remedy, Skytec

11   is not entitled to recover from LogiSYS based on its election of an alternative remedy of its own

12   choosing.

13          Indeed, the parties' subcontracts preemptively rejected the remedy Skytec now seeks by

14   expressly limiting LogiSYS's liability for loss or damage that might arise under the parties'

15   agreement:

16          8. LIMITATION OF LIABILITY

17          LOGISYS shall not be liable to SKYTEC or CUSTOMER for any loss or damage to
            SKYTEC, CUSTOMER, or any third party, caused by failure of the computer programs
18          furnished hereunder to function, in whole or in part, nor shall LOGISYS be liable for any
            incidental or consequential damages under this Subcontract Agreement.
19
     SMF 31.
20
            This provision "leave[s] no doubt" that the contracting parties agreed that LogiSYS could
21
     not be held liable "for any incidental or consequential damages" that might arise under the
22
     agreement. *Id.*; 31 L.P.R.A § 3471; *Luce & Co. v. J.R.T.*, 86 D.P.R. 425, 427 (1962).
23
     Additionally, the provision makes clear that LogiSYS cannot be required to indemnify Skytec
24
     "for any loss or damages" that might result if the computer programs which LogiSYS agreed to
25
     develop failed to function. SMF 31.
26

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14
Case No. 3:15-CV-02104-BJM

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

53094394.4

1   Skytec has provided no alternate interpretation of these provisions, and indeed, no
2   alternate interpretation reasonably exists. This Court must therefore hold the parties to their
3   contractual stipulations. *See Plaza Carolina Mall, L.P.*, 91 F. Supp. 3d at 282; *Cajigas*, 115 F.
4   Supp. 2d at 251; *Nike Int'l, Ltd.*, 760 F. Supp. at 24. LogiSYS cannot be made to indemnify
5   Skytec for purported losses associated with alleged deficiencies in the computer systems
6   delivered by LogiSYS. Nor can LogiSYS be held liable for the incidental and consequential
7   damages which Skytec now claims, and which comprise nearly all of its claimed damages. *See*
8   Dkt. 12, Amended Complaint ¶ 66.

9   The parties agreed upon an exclusive remedy. Skytec must therefore bear any loss it
10  incurred because of its failure to avail itself of that mutually-agreed-upon remedy. This Court
11  should accordingly limit LogiSYS's liability as provided in the parties' subcontracts.

## IV.   CONCLUSION

13  Skytec is not entitled to the protections of Puerto Rico's Law 75 with respect to its
14  contractor-subcontractor relationship with LogiSYS, which Skytec itself impaired and eventually
15  terminated. Nor is Skytec entitled to relief beyond that which the parties agreed upon in their
16  written subcontracts. This Court should therefore enter summary judgment against Skytec on its
17  Law 75 claim and partial summary judgment limiting LogiSYS's potential liability for any
18  purported breach of contract to the remedy specified in the parties' subcontracts.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15
Case No. 3:15-CV-02104-BJM

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

53094394.4

1       RESPECTFULLY SUBMITTED this 25th day of June, 2018.

2
                                 *s/ Carlos A. Rodriguez-Vidal*
                                 Carlos A. Rodríguez-Vidal

3                                 USDC PR 201213
                                 Goldman Antonetti & Cordova, LLC

4                                 Post Office Box 70364
                                 San Juan, PR 00936-8364

5                                 crodriguez-vidal@gaclaw.com

6

7                                 Counsel for Defendant,
                                 Logistic Systems, Inc.

8

9                                 *s/ Samuel T. Bull*
                                 *s/ Lauren J. King*

10                                 Sam T. Bull
                                 Washington State Bar No.  34387

11                                 Lauren King
                                 Washington Bar No.  40939

12                                 Foster Pepper PLLC
                                 1111 Third Ave. Suite 3000

13                                 Seattle, WA 98101
                                 sam.bull@foster.com

14                                 lauren.king@foster.com

15

16                                 *Pro Hac Vice* Counsel for Defendant,
                                 Logistic Systems, Inc.

17

18

19

20

21

22

23

24

25

26

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

53094394.4

1

## <u>CERTIFICATE OF SERVICE</u>

2

       The undersigned hereby certify that on June 25, 2018 the foregoing document was

3

electronically filed with the Clerk of the Court using the CM/ECF System which will send

4

notification of such filing to all counsel of record.  I also hereby certify that I have mailed by

5

United States Postal Service the document to the following non CM/ECF participants: none

6

required.

7

       Dated this 25th day of June, 2018 in Seattle, Washington.

8

9
                                   *s/ Carlos A. Rodriguez-Vidal*
10                                 Carlos A. Rodríguez-Vidal
                                   USDC PR 201213
11                                 Counsel for Logistics Systems, Inc.
                                   Goldman Antonetti & Cordova, LLC
12                                 Post Office Box 70364
                                   San Juan, PR 00936-8364
13                                 Crodriguez-vidal@gaclaw.com

14
                                   *s/ Samuel T. Bull*
15                                 *s/ Lauren J. King*
                                   Sam T. Bull
16                                 Washington State Bar No.:  34387
                                   Lauren King
17                                 Washington Bar No.:  40939
                                   *Pro Hac Vice* Counsel for Logistics Systems,
18                                 Inc.
                                   1111 Third Ave. Suite 3400
19                                 Seattle, WA 98101
                                   Sam.Bull@foster.com
20                                 Lauren.King@foster.com

21

22

23

24

25

26

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17
Case No. 3:15-CV-02104-BJM

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

53094394.4