**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

**SKYTEC, INC.**,
    Plaintiff

    v.                                                                                            Civil No. 15-2104-BJM

**LOGISTIC SYSTEMS, INC.**,
    Defendant.

**OPINION AND ORDER**

    Skytec, Inc. ("Skytec") brought this diversity action against Logistic Systems, Inc. ("Logistic") alleging impairment of a dealership relationship under Puerto Rico Law 75 of June 24, 1964, *as amended*, 10 L.P.R.A. § 278 *et seq.*, ("Law 75"), as well as breach of contract. Dkt. 12. Logistic counterclaimed, alleging breach of contract and the breach of the implied covenant of good faith and fair dealing. Dkt. 14. Each sought damages. Dkts. 12, 14.

    Logistic moved for civil contempt and for sanctions of dismissal of Skytec's causes of action and entry of default judgment on Logistic's counterclaims. Dkt. 104. Skytec opposed, Dkt. 128, and Logistic responded. Dkt. 129. Logistic contends that Skytec has failed to comply with multiple court orders to compel Skytec to produce requested evidence during the discovery process. Dkt. 104 at 1. Logistic emphasizes that Skytec's repeated refusal to cooperate in the discovery process has disadvantaged Logistic, to the point that it has not been able to prepare its case theory, test and build evidence, or depose witnesses in an informed manner. Dkt. 104 at 2.

**BACKGROUND**

    A brief summary of how we got here follows. Logistic, a Montana company, contracted to develop and implement various dispatch, geographic information, and records systems for public safety agencies in Puerto Rico, which were Skytec's local clients. The business relationship deteriorated, and Skytec sued Logistic in August 2015. Dkt. 1. The claims and counterclaims at issue revolve around the parties' business relationship and responsibility for its failure.

    In January 2016, Logistic served Skytec with its first set of interrogatories and requests for production; Skytec did not respond until after a motion to compel had been filed and granted. Dkt.

104 at 12–13 (citing Dkt. 26). The motion also notes Skytec's failure to meet its discovery deadline, to attend a meet and confer in early March, and to adhere to deadlines that it had set itself to produce documents. Dkt. 26. The eventual production, Logistic claims, lacked the core of the information which it sought: Skytec contracts with the government of Puerto Rico, confirmation of payments from the government of Puerto Rico, communications with the government of Puerto Rico, information regarding how Skytec calculated its damages, and Skytec payroll and accounting records. Dkt. 104 at 13. The court granted a second motion to compel, filed in September 2016, and set Skytec a new deadline to supplement its discovery responses with this information. Dkt. 38, 44. Skytec again missed the deadline by several weeks and again produced insufficient responses. Dkt. 104 at 14.

When Logistic began deposing Skytec witnesses in February 2017, multiple deponents "identified a large amount of specific, relevant documents that had not been produced." Dkt. 53. As a result, Logistic again requested those documents from Skytec and ultimately filed a motion to compel after Skytec missed its court-set March deadline to produce expert reports. Due to the missed deadlines and, when finally produced, expert reports that relied on still-unproduced documents, the court ordered those experts excluded. Dkt. 59. That order, issued May 4, 2017, required the missing documents to be produced by May 15 and warned Skytec that further noncompliance "may result in additional sanctions, including, but not limited to, dismissal with prejudice." *Id.* Cementing its pattern of ignoring court orders, Skytec failed to meet this deadline, failed to produce all of the documents requested, and produced some electronic documents in a prohibited format. Less than a week before trial, Skytec has yet to produce the documents.

## DISCUSSION

Discovery sanctions serve both punitive and deterrent purposes, punishing misbehavior and urging compliance with court directions. *AngioDynamics, Inc. v. Biolitec AG*, 991 F. Supp. 2d 283, 290 (D. Mass. 2014), *aff'd*, 780 F.3d 429 (1st Cir. 2015). "Federal Rule of Civil Procedure 37(b) equips courts with a 'veritable arsenal of sanctions' for noncompliance with court directives." *Hawke Capital Partners, L.P. v. Aeromed Services Corp.*, 300 F.R.D. 52, 55 (D.P.R

2014) (quoting *Malot v. Dorado Beach Cottages Assocs.*, 478 F.3d 40, 44 (1st Cir. 1985)). Rule 37 lists several discovery failures that may merit default judgment as a potential sanction. These include disobeying a court's discovery order, Rule 37(a)(2)(A), failure to disclose or supplement an earlier response, Rule 37(c)(1), and failure to preserve electronically stored information, Rule 37(e).

Default judgment "provides a useful remedy when a litigant is confronted by an obstructionist adversary and plays a constructive role in maintaining the orderly and efficient administration of justice." *Crispin-Taveras v. Municipality of Carolina*, 647 F.3d 1, 7 (1st Cir. 2011). Nevertheless, the First Circuit also describes default judgment as a "drastic sanction." *Id*. In a system dedicated to justice and equality before the law, the entry of default judgment extinguishes claims before resolution on their merits. *Companion Health Servs., Inc. v. Kurtz*, 675 F.3d 75, 84 (1st Cir. 2012). District courts, therefore, have the responsibility to assess the parties' good faith and credibility when weighing such a sanction. *See Remexcel Managerial Consultants, Inc. v. Arlequin*, 583 F.3d 45, 52 (1st Cir. 2009) (citing *KPS & Assocs. v. Designs by FMC, Inc.*, 318 F.3d 1, 13 (1st Cir. 2003)). This evaluation takes the form of a fact-specific review of the litigant's behavior in which the court must apply a number of procedural and substantive factors to evaluate whether that conduct merits such a severe response. *Vallejo v. Santini-Padilla*, 607 F.3d 1, 8 (1st Cir. 2010). The court should consider whether the offending party had notice of potential sanctions, the opportunity to explain its misconduct, and the ability to argue against such a penalty. *Id*. The court must also "weigh the severity of the discovery violations, legitimacy of the party's excuse for failing to comply, repetition of violations, deliberateness of the misconduct, mitigating excuses, prejudice to the other party and to the operations of the court, and adequacy of lesser sanctions." *Id*.

Procedural fairness consists of notice and the party's opportunity and ability to explain its misconduct and otherwise oppose default judgment. *Vallejo*, 607 F.3d at 8. In the *AngioDynamics* litigation, the plaintiff's four motions seeking default judgment and the court's explicit warning were sufficient to put the eventually-sanctioned defendants on notice. *AngioDynamics*, 991 F.

Supp. 2d at 290. A court does not necessarily have to warn a defendant, however; constructive notice based on the opposing party's motions to establish liability and to request default judgment can be sufficient. *See Reyes-Santiago v. JetBlue Airways Corp.*, 932 F. Supp. 2d 291, 302 (D.P.R. 2013).

In this case, procedural fairness is clear. The court warned Skytec that dismissal with prejudice was a possible sanction in May 2017 after excluding its expert witnesses. Dkt. 59. The court cited Skytec's "pattern of disregarding the court's orders" and stated explicitly that "failure to comply may result in additional sanctions, including, but not limited to, dismissal with prejudice" *Id.* This litigation has been replete with missed deadlines, missed extensions, and ignored orders to comply. "[A] litigant who ignores a case-management deadline does so at his peril." *Vazquez-Rijos v. Anhang*, 654 F.3d 122, 129 (quoting *Rosario-Diaz v. Gonzalez*, 140 F.3d 312, 315 (1st Cir. 1998)). Logistic filed three motions to compel during the discovery process: one was mooted by eventual production, one was granted unopposed, and the third was opposed and granted in part. Dkts. 26, 38, 53. Skytec opposes the instant motion but refuses to engage with the substance of Logistic's claims. Dkt. 128. Instead of arguing for lesser sanctions, Skytec's position is that it has cooperated and, if the court disagrees, that it has already been punished by the exclusion of its experts. *Id.* at 8–10. Skytec's choice not to explain its misconduct or to argue for a lesser penalty does not negate that it has had opportunity to do so.

The evidence supporting substantive fairness is also convincing. "Although dismissal ordinarily should be employed only when a plaintiff's misconduct is extreme, disobedience of court orders, in and of itself, constitutes extreme misconduct (and, thus, warrants dismissal)." *Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 46 (1st Cir. 2002) (internal citations omitted). Here, Skytec has committed extreme misconduct not only by flouting the district court's scheduling orders but also by willful indifference to Logistic's attempts to coordinate discovery, and persistent refusals to produce documents in its possession.

Skytec missed its first discovery deadlines by months, ignoring discovery requests and rescheduling a meet and confer multiple times only to skip the meeting entirely. Dkt. 26 at 2–3.

As Logistic tried to coordinate the discovery process, Skytec snubbed its efforts. Those missed deadlines and skipped meetings eventually culminated in production, mooting Logistic's first motion to compel. *See* Dkt. 30. This production, however, was inadequate. The court granted both parties more time for discovery, to make up for the months lost in delay, and each filed motions to compel shortly before the deadline. Logistic's motion identified the astonishingly limited number of emails that Skytec had produced, including those from between Skytec and the government of Puerto Rico, which remain missing just a week before trial.[1] Dkt. 38 at 2. When the court provided Skytec additional time to produce expert reports, the reports relied on documents never before produced and, predictably, have still not been produced. *See* Dkt. 59. Not only did this conduct prejudice Logistic's ability to prepare for trial, it drains the resources of the parties and the court. *Vallejo*, 607 F.3d at 6. Those documents include basic accounting and payroll records and communications with and payments to the Puerto Rico government. This particular problem led to the aforementioned sanction order and exclusion of two experts. *See* Dkt. 59. Skytec since has represented to the court and to Logistic that it produced these missing documents and complied with the court's third extended deadline, but the information remains missing. The missing documents fall into five categories: (1) accounting and payroll records; (2) source code for the reporting system used to calculate damages; (3) COCOMO II documents, data, and reports; (4) communications with the government of Puerto Rico regarding the projects at issue and payment for them; and (5) substantive documents related to Skytec's effort to build custom RMS software.

      Skytec has offered excuses for its shortfalls, but most ring hollow. Before delving into them, it is important to note that these are excuses of the worst order. They do not engage with the substance of Logistic's claims, explain said conduct, or acknowledge an iota of responsibility. Skytec cites case law explaining the standard of behavior that merits dismissal but does not attempt to distinguish its stonewalling from such behavior. Dkt. 128 at 1–3. Stonewalling has been

---

[1] Skytec produced eleven emails between it and the Puerto Rico government in response to the discovery request for emails between 2004 and 2016. The Puerto Rico government had been Skytec's client since the early 2000s. Skytec was able to produce 195 emails with Logistic, its business partner since 2005. *See* Dkt. 38 at 11:4–13.

Skytec, Inc. v. Logistic Systems, Inc., Civil No. 15–2104 (BJM)                                            6

described as "frustrating effective discovery and the progress of the case" by "flagrant disregard of court orders," "general evasiveness," and "failure to achieve the time line that [the party itself] had recommended." *Hawke Capital*, 300 F.R.D. at 57 (citing cases). The "plethora of documenta[tion]" Skytec claims it has produced still lacks these specific document categories. *Id.* at 9.

For example, Skytec claims that it produced the accounting and payroll records in December 2017 and that Logistic never objected to that production before the instant motions. Dkt. 150 at 5. Logistic notes that it was able to informally examine some of those records in spring 2018 as part of a mediation process, but they were not formally produced and were not available during discovery. Dkt. 136 at 6. Furthermore, even if Skytec were correct—and the court is not persuaded that it is—the alleged production occurred ten months after discovery closed and long after the court's May 15, 2017 deadline. This in and of itself is a sanctionable offense, especially after the number of deadline extensions provided before that date. *See Tower Ventures,* 296 F.3d at 46. Skytec also claims that all of the emails within its control have been produced, which begs the question of what is no longer under its control and why it retained so few emails in what, like most bureaucratic projects, must have generated hundreds or thousands of communications.[2] There is no proposed spoliation inference here, and mere suspicion regarding the emails' fate is distinct from the outright deception present in other cases where a court ordered default judgment. *See, e.g.*, *JetBlue*, 932 F. Supp. 2d at 298. What is similar, however, is that Skytec's refusal to produce highly relevant documentation provides a strategic advantage. *Id.* A positive consequence alone cannot prove the actor's motivation, but it deserves explanation. Skytec did not address directly the suspicious circumstances, though, instead accusing Logistic of abusing the discovery process. Dkt. 136 at 8. This red herring tactic addresses nothing of substance, and thus is not an adequate defense. Similarly, Skytec does not offer any real excuse as to its failure to produce the custom RMS software-related documentation. *See id.*

---

[2] Logistic argues persuasively that Skytec's efforts to preserve and identify such communications were "grossly deficient." *See* Dkt. 104 at 14–15.

Skytec, Inc. v. Logistic Systems, Inc., Civil No. 15–2104 (BJM)                                              7

Skytec also argues unpersuasively that sanctions cannot be granted under Rule 37 because Logistic's motion depends in part on a motion to compel that this court denied. *See* Dkt. 128 at 4–6. The motion was denied as untimely because the discovery deadline had passed and not because Skytec produced the documents as ordered. This misleading procedural argument once again sidesteps the central issue: Skytec's accountability for its conduct in the discovery process. Skytec's timeliness argument treats the discovery deadline like an eraser. Its arrival, however, does not eliminate a party's responsibilities to produce requested documents especially not in flagrant disregard of a court order to continue production. The court was specific with regard to which documents had to be produced. "Skytec is further ordered to produce, by not later than May 15, 2017 any documents responsive to defendant's Request for Production Nos. 2, 4, 5, 6, 20, and 22, served on or about February 11, 2016, and which were subject to the court's previous order to compel at DE 44." [3] *Id.* Skytec had ignored the court's instruction to produce these documents for

---

[3] Dkt. 53-2 contains a February 24, 2017 letter from Logistic counsel to Skytec counsel detailing the categories of documents missing from production. Each Request for Production ("RFP") is detailed. RFP No. 2 requests "*All Documents, dated after January 1, 2004, from Skytec to the Puerto Rican Government or from the Puerto Rican government to Skytec* which relate to products or services described in, or similar to the products and services described in, any of The Contracts, including but not limited to Agreements, correspondence regarding the goods or services, pricing of the goods or services, delivery of LogiSYS products, and/or payments made or amounts owed under such Agreements, bid requests, bid responses, assumption of risk, lines of credit, assessment or feedback regarding performance of Agreements with Skytec, proposals, implementation plans, and related Documents." RFP No. 4 requests: "*All Documents, dated after January 1, 2004, between Skytec and any other customer or potential customer of Skytec* which relate to products or services described in The Contracts including but not limited to Agreements, correspondence regarding the goods or services, pricing of the goods or services, delivery of LogiSYS products, and/or payments made or amounts owing under such Agreements, bid requests, bid responses, assumption of risk, lines of credit, assessment or feedback regarding performance of Agreements with Skytec, proposals, implementation plans, and related Documents." RFP No. 5 requests: "All Documents, dated after January 1, 2004, that *refer or relate to the Puerto Rican Government's non-renewal any of Agreement with Skytec* relating to products or services described in, or similar to the products and services described in, any of The Contracts." RFP No. 6 requests: "*All Documents relating to payments of sums due under The Contracts*, including invoices, internal accountings or other Documents evidencing amounts due and/ or paid under The Contracts, and Documents relating to failure to pay such sums." RFP No. 20 requests: "*All Documents, dated after January I, 2004, relating to Skytec's efforts to add customers and/or enlarge the market for*

Skytec, Inc. v. Logistic Systems, Inc., Civil No. 15–2104 (BJM)                                                   8

more than a year. The order at Docket 59 essentially re-issued the same order requiring production of documents that had been requested well within the discovery deadline. Hiding behind the procedurally-based dismissal of the latest motion to compel those documents does not alter the fact that Skytec blatantly ignored court orders to produce the same categories of documents not once but twice. The RFPs reflect, roughly, the same categories of information that Logistic seeks. *See supra* note 3. The letter to Skytec counsel repeating the RFPs also includes examples of these documents sought based on deposition testimony from Skytec witnesses who identified unproduced documentation. Dkt. 53-2 at 2–5.

With respect to the categories of evidence yet to be produced, Skytec argues that it deserves more time. The court originally scheduled discovery to end September, 9, 2016; instead, it ended the following February. *See* Dkts. 13, 43. Skytec's latest production, prompted by a court order, came six months after that extension, in August 2017. *See* Dkt. 104. Skytec has had extra time and more with nothing to show for it.

The Federal Rules intentionally alter the adversarial nature of litigation to remove the elements of surprise and gamesmanship to make trial a transparent, fair process. *JetBlue*, 932 F. Supp. at 298 (citing *Baez–Eliza v. Instituto Psicoterapeutico de P.R.*, 275 F.R.D. 65, 69 (D.P.R. 2011); *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682–683 (1958)). Both parties equally must shoulder their discovery burdens and respect the discovery process. Discovery casts a wide net by design. Federal Rule of Civil Procedure 26(b) extends discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Skytec's misconduct leads the court to discuss not missing pieces of relevant evidence but rather missing categories of evidence vital to the heart of the litigation. Skytec's excuses, noted above, are inadequate to mitigate the prejudice caused. In lieu of arguing for lesser sanctions, Skytec suggests that the deprivation of two expert witnesses was sufficient punishment for its

---

*LogiSYS products and services*, as alleged in Skytec's Amended Complaint." RFP. No. 22 requests: "*All Documents evidencing Skytec's claim of $3,618,744 in damages.*" Dkt. 53-2 at 1–2 (emphasis added).

Skytec, Inc. v. Logistic Systems, Inc., Civil No. 15–2104 (BJM) 9

misbehavior. Dkt. 104 at 10. Had that ended the pattern of abuse, then the court might agree. But that is not the case. Prior sanctions cannot be absolution for future misconduct; such an argument fundamentally misunderstands sanctions' dual purpose. *See Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976) (stating sanctions penalize past misconduct and deter future misconduct). Nor, in this case, can lesser sanctions adequately level the playing field.

Skytec's misbehavior and obstructionism during the discovery process has been extensive. This court's inherent power to manage its affairs permit dismissal with prejudice and default judgment. *See* Fed. R. Civ. P. 37(b)(2)(A)(v); Fed. R. Civ. P. 16(f)(1)(C) (a district court may issue, on its own accord, "any just orders . . . if a party or its attorney . . . fails to obey a scheduling or other pretrial order"). The severity of the violations, both deliberate and repeated, is most evident when evaluating their impact on Logistic. Were there only one piece of evidence missing or a single category of relevant but superable evidence withheld, lesser sanctions might be adequate. *See Top Entm't, Inc. v. Ortega*, 285 F.3d 115, 118 (1st Cir. 2002) ("A single instance of prohibited conduct cannot be a basis for [a severe sanction] if the conduct was not particularly egregious or extreme."). Conversely, undermining the opposing party's capacity to present its case constitutes prejudice. *Vallejo*, 607 F.3d at 6. Here, Skytec denied Logistic access to five entire categories of evidence relevant to its defenses and its counterclaims, thus preventing Logistic from building its case. Logistic's inability to argue or defend its currently pending motion for summary judgment captures the impact of Skytec's misconduct. *See* Dkt. 109, 130.

Logistic must defend itself from Law 75 and breach of contract claims and Skytec's claims for monetary and injunctive relief, and it must prove its own breach of contract and damages claims. Dkts. 12, 14. All claims boil down to which party first impaired the contracts between them. Skytec argues that Law 75, which protects Puerto Rico distributors from abuses by their foreign suppliers, applies to its contracts with Logistic. *See* 10 L.P.R.A. § 278, *et seq.* If Law 75 applies, Logistic must show that it did not impair the contract or, if it did so, that there was just cause. Dkt. 109; *see also* 10 L.P.R.A § 278a. The First Circuit has held repeatedly that "paying for goods on time normally is one of the essential obligations of the dealer's contract, the non-

fulfillment of which can constitute just cause under Law 75." *Waterproofing Sys. v. Hydro-Stop, Inc.*, 440 F.3d 24, 29 (1st Cir. 2006) (citation and internal quotation marks omitted). Skytec contends that occasional failures to pay Logistic on time were attributable to tardy government payments, and Logistic cannot contest this excuse without relying on Skytec's communications with and payments from the Puerto Rico government. No lesser sanction could compensate for the information deficit Logistic faces regarding this claim. Skytec's claims for monetary relief similarly depend on missing categories of evidence. Skytec calculated its damages using COCOMO II software. The modeling program produces an estimate of time spent working on projects based on data entered, which includes payroll, overhead, and the type of code written and its complexity. The ultimate calculation is directly related to the source code and what it does with that input data. Logistic has requested the COCOMO II source code and related documents, data, and reports in order to verify the reliability of the program, its calculations, and the data on which it depended. Dkt. 104 at 21. Skytec's effort to build custom RMS software, which supposedly substituted for Logistic's products, is also relevant to properly calculating damages because it is also an underlying data point for the COCOMO II calculation. Without such information, Logistic cannot mount a defense to the claimed damages or properly challenge them.

Logistic's own counterclaims likewise depend on these categories. Establishing a breach of contract and a breach of the covenant of good faith and fair dealing requires proof that late payments were attributable to Skytec rather than to the Puerto Rico government. Demonstrating that depends, as all of the other claims in this case do, on the missing information. The sole counterclaim that can be adjudicated with a semi-complete record is Logistic's claim for breach of contract damages, which depended on Logistic's productions rather than Skytec's. While these discovery violations prejudiced Logistic in defending against Skytec's claims and in proving its counterclaims, Logistic should be equipped to prove its damages claim at a default damages hearing. Likewise, Skytec should be able to introduce evidence controverting the amount of Logistic's damages, though it may not exploit this opportunity to prosecute its dismissed claims.

Accordingly, I find as to Logistic's counterclaims that entry of default, rather than default judgment, is the appropriate sanction at this time.

Skytec's misconduct has been deliberate, and its withholding of crucial documents has severely prejudiced Logistic. In light of the numerous and persistent violations of the discovery process, the centrality of the missing document categories, and the absence of any mitigating excuse, Skytec's claims are dismissed with prejudice and default is entered as to Logistic's counterclaims. *See* Fed. R. Civ. P. 37(b)(2)(A). Logistic's damages will be addressed at a default damages hearing to be held in lieu of trial.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 12th day of September, 2018.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge