# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **SKYTEC, INC.,**<br>    Plaintiff<br><br>**V.**<br><br>**LOGISTIC SYSTEMS, INC.,**<br>    Defendant. | Civil No. 15-2104 (BJM) |

## ORDER

Skytec, Inc. ("Skytec") brought this diversity action against Logistic Systems, Inc. ("Logistic") alleging impairment of a dealership relationship under Puerto Rico Law 75 of June 24, 1964, as amended, 10 L.P.R.A. § 278 et seq., ("Law 75"), as well as breach of contract. Dkt. 12. Logistic counterclaimed, alleging breach of contract and the breach of the implied covenant of good faith and fair dealing. Dkt. 14. Each sought damages. Dkt. 12, 14. The court granted Logistic's motion for entry of default judgment in light of Skytec's deliberate misconduct in the discovery process, dismissing Skytec's claims with prejudice and entering default as to Logistic' counterclaims. Dkt. 160. Later the same day, Skytec filed for bankruptcy, and the court stayed proceedings. Dkt. 164; *see In re Skytec Inc.*, Case No. 18-5288 (Bankr. D.P.R. Sept. 12, 2018).

The parties are back before the court to resolve this litigation with permission of the bankruptcy court. Logistic moves for default judgment and for attorney's fees. Dkt. 169, 181. Skytec filed a motion in opposition to some of Logistic's claimed attorney's fees. Dkt. 178. A post-default hearing was held on February 13, 2019. Dkt. 176. Both parties appeared at the hearing through counsel.

## DEFAULT JUDGMENT STANDARD

After an entry of default has been made, "the court . . . may examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action." *Ramos-Falcón v. Autoridad de Energía Eléctrica*, 301 F.3d 1, 2

(1st Cir. 2002) (citing *Quirindongo Pacheco v. Rolon Morales*, 953 F.2d 15, 16 (1st Cir. 1992)). The party in default "is taken to have conceded the truth of th[ose] factual allegations." *Franco v. Selective Ins. Co.*, 184 F.3d 4, 9 n.3 (1st Cir. 1999). The plaintiff's claims have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citation omitted). Default can only establish a defendant's liability, so plaintiffs must establish the extent of the damages resulting from the defendant's violations. *See Eisler v. Stritzler*, 535 F.2d 148, 153–54 (1st Cir. 1976). A post-default hearing to determine the plaintiff's award is necessary if the amount of damages is in dispute or not ascertainable from the pleadings. *Graham v. Malone Freight Lines, Inc.*, 314 F.3d 7, 16 (1st Cir. 1999).

**BACKGROUND**

Logistic, a Montana company, contracted to develop and implement various dispatch, geographic information, and records systems for public safety agencies in Puerto Rico, which were Skytec's local clients. The business relationship deteriorated, and Skytec sued Logistic in August 2015. Dkt. 1. Subcontractor agreements for four projects were at issue: Puerto Rico Emergency Management Services Administration ("AEMEAD" by its Spanish name); Puerto Rico Law Enforcement Dispatch System ("PRLEDS"); METRO I; and METRO II. *See* Ex. 2, 3, 4, 5. Because the court entered default on Logistic's counterclaims and Skytec's claims were dismissed with prejudice, it has been adjudicated that Logistic complied with its obligations under the contracts. On the same lines, it has been adjudicated that Skytec failed to comply with its obligation to pay Logistic for its services rendered. Dkt. 160.

At the default hearing Logistic presented testimony from its expert witness, Carlos Baralt-Benítez ("Baralt"). Baralt is a Certified Public Accountant who also holds a certification in financial forensics and as a fraud examiner. *See* Ex. 1. Baralt reviewed the four subcontractor agreements for how much money is owed and compared them to

invoices and amounts paid to calculate how much money remains to be paid. Ex. 6, 7. Skytec stipulated to the authenticity of the invoices during the course of litigation. Dkt. 149. The annual license and maintenance fees show an increase between Baralt's initial expert report, Exhibit 6, and his supplemental expert report, Exhibit 7, because the supplement reflects the invoice sent in January 2017, which covers the time between Skytec terminating their relationship and the end of the required sixty-day notice for terminating the contractual agreements.

Money owed can be broken into three categories: payments due on completion of contractual milestones, license and maintenance fees, and service charge accrual on sums not paid within sixty days of the invoice. *See* Ex. 6 at 4. By subtracting the money Skytec paid from the sum owed to Logistic on the invoices, Baralt found that Skytec owes $357,186 for program installations. Ex. 7, Updated Table 1. Through the same method, Baralt found that Skytec owes Logistic $2,414,898 for annual license and maintenance fees. *Id.*

Skytec filed for bankruptcy on September 12, 2018, so Baralt calculated the interest owed on unpaid invoices through that date only. Ex. 8 (updated Table 10). The subcontract agreements did not provide for a specific interest rate to be applied to tardy payments. The invoices Logistic sent to Skytec stated that "'[s]ervice charges at 12 percent annually will accrue on past due accounts," and the rate it typically applies for these "service charges" is 12 percent. Ex. 6 at 4. Baralt testified that he was not aware if Logistic had accepted late payments without service charges or with service charges of less than 12 percent in the course of other contracts with Skytec. Ultimately, Baralt calculated the service charges owed at rates of 12 percent, six percent, and the relevant rate set by the Office of the Commissioner of Financial Institutions of Puerto Rico ("OFCIPR"). Baralt selected the latter rates because they are common gap-fillers in contracts where parties do not set a rate. At twelve percent, Skytec would owe $993,928; at six percent, Skytec would owe $496,964; and at the OFCIPR rates, Skytec would owe $386,336. Ex. 8, Updated Table 10.

# DISCUSSION

*Default Judgment*

Pursuant to Article 1054 of the Puerto Rico Civil Code, a party seeking to prove breach of contract must show the existence of a valid contract and a breach by one of the parties to that contract. *Torres v. Bella Vista Hosp., Inc.*, 523 F. Supp. 2d 123, 152 (D.P.R. 2007). A valid contract requires consent of the parties, a definite object which is the subject of the contract, and the cause for the obligation which may be established. 31 L.P.R.A. § 3391. There is no question that their subcontracts were valid and that Skytec breached them. Skytec owes Logistic the sums they are contractually obligated to pay as well as interest, or service charges, on those amounts.

Interest generally stops accruing when a party files for bankruptcy. *United States v. Robinson*, 929 F.2d 1, 2 (1st Cir. 1991) (citing *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 246 (1989)). Skytec filed for bankruptcy on September 12, 2018, so Baralt calculated the interest owed on unpaid invoices through that date only. Ex. 8 (updated Table 10). Prejudgment interest is appropriate as long as that interest deals with a tangible loss. *Velez v. P.R. Marine Mgmt., Inc.*, 957 F.2d 933, 941 (1st Cir. 1992). Skytec and Logistic omitted a rate of interest, so the court must select a gap-filling term. In Puerto Rico, the law prohibits a fixed rate of interest greater than 8 percent annually when the sum at issue exceeds three thousand dollars. 31 L.P.R.A. § 4591. The same law prescribes six percent as a gap filler when parties do not agree upon an interest rate in a contract. *See id.* The court therefore adopts the six percent interest rate, so the service charges owed on the license and maintenance fees through September 12, 2018 total $496,964. Exhibit 8, Updated Table 10.

Skytec owes Logistic under the contract $357,186 for program installations, $2,414,898 for annual license and maintenance fees, and $496,964 for service charges on those tardy fee payments, which is a total of $3,269,048.

**Expert's and Attorney's Fees**

Logistic moved for expert's fees and attorney's fees at the default hearing; the parties agreed that costs must wait until after judgment. Logistic requests an award of $1,267,694.54 for its reasonable attorney fees, $32,847.40 for its expert fees, and $101,047.92 for expenses. Dkt. 169 at 2.

### *Expert's Fees*

Logistic seeks $32,847.40 in fees, including taxes, for its expert, Baralt. Baralt spent 115.25 expert hours on the case and charged the standard hourly rate of $220 for his services. Dkt. 169 at 12. At the hearing, Skytec did not object to the requested expert fees or their calculation. The subcontract agreements expressly provide for attorney's fees but do not address expert's fees. *See, e.g.*, Ex. 2 at 9 ("the prevailing party shall be entitled to reasonable attorney's fees and costs").  Law 75, however, includes expert's fees. "In every action filed pursuant to the provisions of this chapter, the court may allow the granting of attorney's fees to the prevailing party, as well as a reasonable reimbursement of the expert's fees." 10 L.P.R.A. § 278e. In the absence of any objection from Skytec, the court finds Logistic's request for $32,847.40 in expert's fees reasonable. Notably, Baralt is the only person requesting fees who has provided itemized descriptions of his hours billed. Dkt. 169-8.

### *Attorney's Fees*

Logistic claims attorney's fees on three separate grounds: the subcontract agreements, Law 75, and Puerto Rico Rule of Civil Procedure 44. Skytec objected to the out-of-state rates claimed but made no argument regarding the amount of time Foster Pepper, an out-of-state firm, spent on the case and the rates charged. Dkt. 178 ¶¶ 3, 7–9.

The subcontract agreements provide for attorney's fees to be awarded to the prevailing party in any litigation. Ex. 2 at 9; Ex. 3 at 9; Ex. 4 at 9; Ex. 5 at 9. The identical clauses state: "In the event of litigation between the parties arising out of this Subcontract Agreement, the prevailing party shall be entitled to reasonable attorney's fees and costs, as determined by the court or arbitrator." *Id.* Dkt. 169 at 6–7.

In a diversity action, state law governs attorney's fees. *Marrero-Ramos v. Univ. of P.R.*, 46 F. Supp. 3d 127, 131 (D.P.R. 2014). Law 75, which governs dealership contracts in Puerto Rico, provides for attorney's fees when parties litigate an issue that arises from the dealership relationship. *See* 10 L.P.R.A. § 278e. Unlike the subcontracts, Law 75 does not require that an award of attorney's fees be "reasonable." Dkt 169 at 7.

When the grant of attorney's fees stems from "temerity, contumacy, or vexatious litigation techniques," the Puerto Rico Rules of Civil Procedure also provides for attorney's fees. Logistic claims attorney's fees under the Puerto Rico Rule of Civil Procedure 44.1 "as a consequence of Skytec's malfeasance throughout this case." Dkt. 169 at 7. Rule 44.1 permits the court to impose the payment of a sum that "corresponds" to a party's obstinate or frivolous conduct. P.R. R. Civ. Pro. 44.1(d). "A party is obstinate under Rule 44.1(d) if it engages in actions which (a) make necessary litigation which could have been avoided, (b) prolongs the litigation unnecessarily, or (c) requires the other party to incur expenses in the pursuit of avoidable tasks." *Newell P.R. v. Rubbermaid Inc.*, 20 F.3d 15, 24 (1st Cir. 1994), *abrogated by statute*, Fed. R. Civ. Pro. 37(c)(1) amend. 1993. Logistic contends that this court stated grounds that support a Rule 44.1(d) award in its contempt order at Docket No. 160. Logistic requests the court bear in mind Skytec's conduct when determining what fees and expenses are reasonable. Dkt. 169 at 8.

Logistic proposed its attorney's fees be calculated using the lodestar method, which is the First Circuit's "method of choice for calculating fee awards. *Matalon v. Hynnes*, 806 F.3d 627, 638 (1st Cir. 2015). The lodestar approach consists of two steps. First, the district court calculates the number of hours that the prevailing party's attorneys involved reasonably would have spent on the litigation, excluding any unnecessary, excessive, or redundant hours. The court then multiplies those hours by the reasonable hourly rate for each attorney. Courts generally determine reasonable rates by looking to the prevailing rates charged in the community by lawyers with similar qualifications, experience, and competence. *Id.* (internal citations omitted). The sum total is the fee award, but a district

court may adjust the award up or down to reflect other factors. *Id.* Logistic requests $1,267,694.54 in attorney fees for 4,321.5 hours at varying rates.

Courts should review attorney's hourly rates with an eye to who performed the work, the type of work, the expertise necessary, and when it was performed. *Libertad v. Sanchez*, 134 F. Supp. 2d 218, 231 (D.P.R. 2001). If an attorney is an out-of-town legal specialist, he or she may charge out-of-town rates for work that could not have been performed by a local attorney. *Id*. at 235. If local attorneys with comparable experience could have performed the work, then the local rate will be applied. *Id.* Hourly rates within a legal community vary, and the party seeking fees bears the burden of establishing the prevailing rates for comparable legal services. *Id.* at 231. "A party seeking attorneys' fees is required to present evidence other than the attorney's own affidavits regarding the prevailing hourly rate." *Id.* Logistic did not do so here, although it did submit examples of attorneys' fees approved by the District of Puerto Rico in special bankruptcy proceedings in 2017. *See* Dkt. 181-1 at 1–3. The party must also submit a "particularized account" of how each billed hour was spent and on what day. *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 527 (1st Cir. 1991). Logistic did not do so here, instead dividing hours according to which attorney billed them. Dkt. 169.

When records are generic and prevent the court from evaluating the claims, then the court may discount or disallow those hours. *Rodriguez v. Puerto Rico*, 764 F. Supp. 2d 338, 345 (D.P.R. 2011) (citing *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 336 (1st Cir. 2008)); *see, e.g.*, *Latin Am. Music Co. v. Media Power Grp., Inc.*, 989 F. Supp. 2d 192, 198 (D.P.R. 2013) (reducing non-itemized hours spent on a "reply brief" and "work related to First Circuit oral arguments" by ten percent). Here, neither law firm provided itemized billing records, or broke down hours in any way except for by attorney. *See* Dkt. 169-2 at 5–6; Dkt. 169-5 at 3. Even then, Foster Pepper attorneys whose standard rates changed during the four years of litigation failed to indicate their total hours billed into which were billed at a certain rate or in a certain year. Dkt. 169-2 at 5–6.

### *In-state Attorney's Rates*

Logistic hired Puerto Rico law firm Goldman Antonetti & Cordova, LLC ("GAC"), which recorded 1,098 hours expended during this litigation. GAC does not seek to recover fees for individuals who spent less than five hours on the case, which reflects the same judgment GAC used when billing Logistic. Dkt. 169 at 11; *see* Dkt. 169-5 at 3. One GAC partner, Carlos A. Rodriguez Vidal ("Rodriguez") and two GAC associates, Rosanna Rivero Marin ("Rivero") and Julybeth Alicea Rodriguez ("Alicea"), worked on the matter. Dkt. 169-5 at 1–2. To identify the reasonable hourly rate, "'the court may rely upon its own knowledge of attorneys' fees in the community.'" *Cofino-Hernandez v. Puerto Rico*, 230 F. Supp. 3d 69, 73 (D.P.R. 2017) (quoting *Rodriguez v. International College of Business and Technology, Inc.*, 356 F. Supp. 2d 92, 96 (D.P.R. 2005)).

A review of attorney's fees awarded in the District of Puerto Rico indicates hourly rates hovering around $250 to $300 for experienced attorneys, $150 to $200 for associates, and $100 for law clerks and paralegals. *See Cofino-Hernandez v. Puerto Rico*, 230 F. Supp. 3d 69, 73 (D.P.R. 2017); *Navarro-Ayala v. Governor of P.R.*, 186 F. Supp. 3d 128, 137 (D.P.R. 2016) (collecting cases); *Climent García v. Autoridad de Transporte Marítimo y Las Islas Municipio*, 59 F. Supp. 3d 335, 338–339 (D.P.R. 2014); *Rodríguez-García v. Municipality of Caguas*, 787 F. Supp. 2d 135, 141 (D.P.R. 2011); *see also* Dkt. 181-1 (sampling of approved attorney's fees in PROMESA bankruptcy proceedings in 2017).

Logistic requests $325 per hour for Rodriguez, who billed 747.75 hours billed in the case. Dkt. 169-5 at 2. Vidal has thirty-five years of experience in civil and commercial litigation; he is admitted to practice in seven different federal and state courts. Dkt. 169-6 at 2–3. Skytec challenged the $325 rate for senior partners and suggested that it be reduced to $250 hourly, but Skytec offered no support for this contention. Dkt. 178 at 4. Nevertheless, Rodriguez's rate will be reduced to $275 hourly in light of his experience.

Logistic requests $150 hourly for Rivero's 297.75 hours billed. Dkt. 169-5 at 2. Rivero has been practicing law in Puerto Rico for more than a decade; she holds four post-

secondary degrees. *Id.* Skytec did not oppose this rate. Dkt. 178. For an attorney with a decade of experience, the rate is on the lower end, but the court will accept it. Logistic requests $130 hourly for Alicea's 52.5 hours billed. Dkt. 169-5 at 2. Alicea, who no longer works for GAC, began practicing law in 2017. *Id.* Skytec did not oppose this rate. Dkt. 178. The court finds this appropriate for a new lawyer.

### *Out-of-State Attorney's Rates*

Logistic hired Foster Pepper PLLC as its stateside counsel, and Foster Pepper seeks to recover fees for 3,223.5 hours worked on the case. Dkt. 169 at 12. Foster Pepper does not seek to recover for 88.1 hours spent on side issues, fees for individuals who spent less than five hours on the case, and time spent on the case not billed to Logistic. *Id.* at 11. Foster Pepper will, however, submit a supplemental petition requesting the fees spent in preparation for the damages hearing. *Id.* Foster Pepper gave Logistic a twenty percent discount on legal services. *Id.* at 10.

Skytec contests Foster Pepper's fees on several grounds. First, Skytec argues that an out-of-state law firm has no place in "a simpl[e] breach of contract" that began with a local law and was litigated in Puerto Rico. Dkt. 178 ¶¶ 3, 7. This understates the complexity and duration of this case, which lasted three years and grew to includes multiple claims and counterclaims. But Skytec is correct, if not necessarily for the reasons stated. Puerto Rico must serve as the relevant community to determine fees, rather than the law firm or lawyers' community in the United States, i.e. Seattle, because there are local lawyers more than able to handle the civil litigation at issue in this case. *See Libertad*, 134 F. Supp. 2d at 235. Logistic justifies its retention based on its CEO's longstanding relationship with the firm and its lead counsel, Samuel Bull. Bull and Foster Pepper "achieved a highly favorable result in a complex civil trial for another company run by" Logistic's CEO, and Logistic regarded its litigation with Skytec as "bet-the-company" and requiring a firm with sufficient resources to handle discovery and motions practice. Dkt. 169 at 10.

While it is necessary to have "some articulable reason" for retaining stateside

counsel, that alone is not sufficient justification to force a local opponent to pay higher fees. *See United States v. Funds Seized from Certain Domestic Bank Accounts Representing Proceeds of Narcotics Trafficking & Money Laundering*, Civ. No. 01-1260, 2004 WL 3365841, at *2–3 (D.P.R. Sept. 29, 2004). Logistic may be an out-of-state defendant, but it actively sought business in Puerto Rico, had no business ties with Foster Pepper except through its CEO, and hired a law firm from a geographic area distinct from its place of incorporation. These differences distinguish it from *Funds Seized*, where the out-of-state party had no local ties, the legal specialty required was rare in Puerto Rico, and stateside counsel was from the region in which the party's involvement in the case originated. *Id.* at *3. Foster Pepper's fees will not be stricken entirely, as Skytec contends they should be, but they will be reduced to match the prevailing market rate in Puerto Rico. *See* Dkt. 178 ¶ 8.

Logistic requests fees ranging from $450 to $540 per hour for Samuel T. Bull, who billed 989.8 hours. Bull has sixteen years of experience in civil litigation and focuses his practice on intellectual property law; he is admitted to six bars and is of counsel at Foster Pepper. Logistic also requests fees ranging from $450 to $570 per hour for Lauren J. King, who billed 472.1 hours on the case. King is a member at Foster Pepper, the equivalent of a partner, and was has eleven years of experiences. She is admitted to practice before six bars and specializes in transactional business practices and intellectual property. Bull and King's rates will be reduced to $300 per hour, a more appropriate rate for the given community.

Logistic requests fees ranging from $260 to $335 per hour for Spencer Coates and $280 per hour for Kelly Mennemeier, who are both associate-level attorneys. Dkt. 169 at 9; Dkt. 169-2 at 6. Coates billed 668.1 hours; he has six years of experience. Dkt. *Id.* at 4. Mennemeier billed 199 hours; she has three years of experience. *Id.* Foster Pepper also used a contract attorney, Steve Kennedy who billed 185 hours at $75 per hour, and seven paralegals and a research attorney who billed between $75 and $245 per hour for 709.5

hours. The associate rates will be reduced to $150 hourly and the paralegals and contract attorney to $75 hourly, which is a reasonable rate in Puerto Rico.

### *Hours Billed*

Neither firm in this case explained their billing practices, itemized their hours, or even noted which hours were billed in which year despite litigation unfolding over four years and lawyer's hourly rates changing with each year. This is an unreasonable approach, and one that courts commonly meet with a reduction in the fee request. *See, e.g.*, *O'Neill-Cancel*, 524 F.3d at 340 (First Circuit affirms fifteen percent reduction for block billing practice). Courts may also reduce fee requests when counsel uses practices that tend to inflate the hours billed, such as billing in quarter-hour increments rather than six- or ten-minute periods. *See, e.g.*, *Rodríguez-García v. Municipality of Caguas*, 787 F. Supp. 2d 135, 143 (D.P.R. 2011) (reducing by twenty percent the hours billed). Foster Pepper states that it has already discounted its standard billing rates by 20%, Dkt. 169-2 at 2, but Puerto Rico is the relevant market for rates, so that discount makes no impact on the ultimate award.

GAC and Foster Pepper submitted records with block billing and failed to itemize the tasks performed during those hours. Neither firm divided the hours spent between the rates applicable each year. The absence of any information about how the attorneys substantiate their hours billed is careless and needlessly complicates the court's work. Therefore, a fifteen percent global reduction will be applied to the attorney's fees, following the example of the First Circuit in *O'Neill-Cancel*.

Logistic requested that the court bear in mind Skytec's misconduct throughout the litigation, culminating in sanctions and the entry of default judgment, when determining what rates are reasonable in this case. Dkt. 169 at 8. The court is not convinced that Puerto Rico Rule of Civil Procedure 44.1(d) contemplates any upward adjustment of fees and expenses. Accordingly, the court awards eighty-five percent of the attorney's fees recorded for a total of $758,915.06. GAC will receive $218,550.94, and Foster Pepper will receive

$540,364.13

*Expenses*

Logistic requests $101,047.92 for expenses. Dkt. 169 at 2. Skytec did not object to Logistic's expenses request. *See* Dkt. 178. Attorneys incurred those expenses in e-discovery, deposition transcripts, translation and interpretation of Spanish into English, travel expenses, photocopying, shipping documents, and trial consultants, among other things. Dkt. 169 at 13; *see also* Dkt. 169-2 at 7–13 (Foster Pepper, LLC, expenses); Dkt. 169-5 at 3–5 (Goldman Antonetti & Cordova, LLC, expenses). Reasonable expenses necessary to prosecute a case may be included as part of a fee award. *See Hutchinson v. Patrick*, 636 F.3d 1, 17 (1st Cir. 2011). In the absence of any objection from Skytec, the court finds Logistic's request for $101,047.92 in expenses reasonable.

## CONCLUSION

For the above reasons, default judgment should be **GRANTED**. I enter judgment for Logistic against Skytec in the amount of **$4,161,858.38** on Logistic's state law claim for breach of contract.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 15th day of March, 2019.

*S/ Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge